UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THE OHIO CASUALTY INSURANCE COMPANY and OHIO SECURITY INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:19-cv-2974-MTS |
| EAGLE MIST CORPORATION d/b/a OSAGI INTERNATIONAL, and KEVIN LAUGHLIN | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER**

Before the Court is Plaintiffs' Motion for Summary Judgment, Doc. [58], pursuant to Federal Rule of Civil Procedure 56.  For the reasons set forth below, the Court denies in part and grants in part Plaintiffs' Motion.

I.    **BACKGROUND**

This case arises from Plaintiffs the Ohio Casualty Insurance Company ("Casualty") and Ohio Security Insurance Company ("Security") (collectively, "Plaintiffs") assumption of defense for Defendants Eagle Mist Corporation d/b/a Osagai International ("Eagle Mist") and Kevin Laughlin ("Laughlin") (collectively, "Defendants") in a state court lawsuit pending in California ("Underlying Lawsuit").

The undisputed facts are as follows.  In October 2015, Eagle Mist entered into a written agreement with Sapphire Bakery Company, LLC ("Sapphire").  Doc. [60] ¶ 25.  This arrangement called for Sapphire to produce nutrition bars, for Eagle Mist to supply the Sapphire bars to Defense Nutrition, LLC ("Defense Nutrition"), which was to supply them to Julian Bakery, Inc. ("Julian").

*Id.* ¶¶ 40-41.  From April to July 2016, Sapphire manufactured protein bars utilizing Defense Nutrition's formulas and ingredients provided by Eagle Mist. Doc [60-11] at 1.

On January 9, 2016, Ohio Security issued a commercial general liability policy of insurance to Sapphire ("Security Policy"), and Ohio Casualty issued a commercial umbrella policy of insurance to Sapphire ("Casualty Policy") (collectively, "Policies").  Doc. [60] ¶¶ 5-8.  The Policies only cover "those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, or personal and advertising injury to which insurance applies."  Doc. [60-2] at 94 (Security policy); *see also* Doc. [60-3] at 42 (Casualty policy: "We will pay…those sums…that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an 'insured contract' because of 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury').

To add an "additional insured," the Security Policy requires the name insured – Sapphire – "to name as an *additional insured* on this policy under a written contract or written agreement…the written contract or agreement must be: (a) currently in effect or becoming effective during the term of this policy; and (b) executed prior to the 'bodily injury', 'property damage', 'personal and advertising injury.'  Doc. [60-2] at 166.  The Casualty Policy provides an "insured" may be "[a]ny person or organization, other than the Named Insured, included as an additional 'Insured' by virtue of an 'insured contract.'"  Doc. [60-3] at 48.  The Casualty Policy defines an "Insured contract" in pertinent part as "any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the 'tort liability' of another party." *Id.*

In April 2016, Defendants requested that Sapphire add them as additional insureds. Doc. [60] ¶ 30.  Sapphire agreed in writing to add Defendants as additional insureds and per Sapphire's

request, an agent of Defendants issued certificates of insurance. *Id.* ¶¶ 31-35.

In August 2016, Defense Nutrition sued Julian in the Superior Court of the State of California, for the County of Los Angeles ("Underlying Lawsuit"). Doc. [60-5]. In November 2016, Julian filed a first amended cross-complaint in the Underlying Lawsuit, suing[1] Defendants for: (1) breach of contract, as a third party beneficiary, (2) damages after buyer's rightful rejection of defective goods, (3) negligence, (4) breach of warranty, (5) unfair business practices, (6) fraud, (7) negligent misrepresentation, and (8) promissory estoppel. Doc. [60-6]. Julian also sought rescission of contract and specific performance. *Id.* Julian alleged, among other things, that it received "defective products," because Defense Nutrition, Eagle Mist, and Sapphire modified "the formula and ingredients" of the bars. *Id.* ¶¶ 25, 29. In January 2017, Defense Nutrition filed a cross-complaint in the Underlying Lawsuit against Defendants for: (1) equitable indemnity, (2) breach of contract, (3) fraud, (4) declaratory relief, and (5) express indemnity. Doc. [60-7]. Defendants tendered the Underlying Lawsuit to Plaintiffs, and Security has been defending Defendants in the Underlying Lawsuit. Doc. [60] ¶ 47. Defendants selected their own counsel and Security has been paying[2] attorney's fees and costs for the defense of, and on behalf of, Defendants for the Underlying Lawsuit. *Id.* ¶¶ 48-50.

On March 2, 2017, Plaintiffs sent a letter ("March 2017 letter") to Defendants stating, among other things, they would "agree at this time" to provide a defense to Defendants for the Underlying Lawsuit "subject to a reservation of all rights." *See* Doc. [60-8] at 3-25. The March 2017 letter listed "the grounds under which some or all aspects of the Lawsuit *may not be* covered under the [insurance] Policies…. with respect to the Lawsuit include, but are not limited to:

---

[1] Sapphire was also named as a party.
[2] As of March 30, 2021, Plaintiff has paid a total of $839,186.97 in attorney's fees and costs on behalf of Defendants for the Underlying Lawsuit.

> Coverage exists under the Policy(ies) for damages because of 'bodily injury' or 'property damage' as defined by the Policy(ies).  To the extent the Lawsuit seeks damages that do not constitute 'bodily injury' or 'property damage,' including claims for economic damages for *breach of contract, unfair business practices, trade secret misappropriation, fraud, misrepresentation, and interference with prospective economic advantage, there is no insurance coverage for such claimed damages*.

> Coverage exists under the Policy(ies) for 'bodily injury' or 'property damage' caused by an 'occurrence' as defined by the Policy(ies). *To the extent the Lawsuit does not involve 'bodily injury' or 'property damage' caused by an 'occurrence'* (defined as an accident), *there is no insurance coverage* for the claimed injury or damage under Coverage A Bodily Injury and Property Damage Liability."

*Id.* at 19 (emphasis added).  Despite these coverage issues, the March 2017 letter states Plaintiffs agreed "to provide a defense to [Defendants] in the Lawsuit, subject to a complete reservation of their rights." *Id.* at 21.  Some of the reservations included: (1) "reserve[ing] the right to have a court determine whether or not [Plaintiffs] are, or ever were, obligated to defend or indemnify the Insured with respect to the Lawsuit," (2) "[Plaintiffs] fully and completely reserve our rights under the Policies and applicable law *to decline insurance coverage … at a later date as warranted,*" and (3) "To the extent that Ohio Security pays for the defense of claims that do not fall within the scope of coverage, it reserves all rights under applicable law to *seek reimbursement* of those amounts." *Id.* at 24, 18, 23.  The March 2017 letter further stated, "by accepting the defense of the Lawsuit pursuant to this reservation-of-rights letter, [Plaintiffs] are not admitting any legal duty to defend or indemnify exists or ever existed" and "*does not waive…*the subject policies' terms, *nor does it waive* [Plaintiffs'] right to dispute issues of coverage." *Id.* at 24.  Based on the March 2017 letter, Defendants were "advised and informed of its right to select independent counsel" and accepted Plaintiffs' defense after "consider[ing] this matter fully and freely waiv[ing] its right to select independent counsel." *Id*. at 26.  On November 29, 2018 and November 8, 2019, Plaintiffs sent updated reservation of rights letters to Defendants, similar to the March 2017 letter.

On April 23, 2019, the California state court ("California Court") dismissed Julian's claims

for negligence and negligent misrepresentation against Eagle Mist.  Doc. [60] ¶ 52.  On November 5, 2019, Plaintiffs filed their Complaint for Declaratory Judgment, alleging they had no obligation to defend or indemnify Defendants because "as of April 23, 2019, no claims against [Defendants] in the Lawsuit were even potentially covered claims." Doc. [55] ¶ 45.

On January 27, 2020, the California Court granted, in part, Eagle Mist's motion for judgment on the pleadings against Julian, dismissing Julian's claims against Eagle Mist for: (1) specific performance, (2) damages after buyer's rightful rejection of defective goods, (3) rescission of contract, (4) breach of warranty, and (5) unfair business practices. Doc. [60-11].  As a result of the January 2020 judgment, Julian's claims remaining in the Underlying Lawsuit against Eagle Mist were: (1) breach of contract, (2) fraud, and (3) promissory estoppel. *Id.*  Julian's claim for breach of contract (third party beneficiary) seeks relief for its out-of-pocket costs, lost profits, and damage to reputation and good will, arising from Eagle Mist's alleged "failing to timely manufacture and procure conforming products." Doc. [60-6].  Julian's claim for fraud seeks damages for Eagle Mist's alleged fraudulent representations relating to the bars. *Id.*  Julian's claim for promissory estoppel seeks relief against Eagle Mist for lost profits and damaged good will arising from orders it could not fill, and receipt and sale of an inferior product (*ie:* the bars). *Id.*

On January 27, 2020, the California Court also granted, in part, Defendants' motion for judgment on the pleadings against Defense Nutrition, dismissing Defense Nutrition's claims against Defendants for: (1) equitable indemnity, (2) declaratory relief, and (5) express contractual indemnity. Doc. [60-11].  In support of their motion, Defendants argued that the "cause of action for express contractual indemnity is moot" because "the only claims asserted against [Defense Nutrition] regarding the personal injury and hardness of the bars were dismissed on November 21, 2017, after the Court granted [Defense Nutrition] and Julian Bakery's Motion for Good Faith Settlement." *Id.* at 9.  Defendants argued that "there are no claims remaining made based on

personal injury made against or in favor of [Defense Nutrition]." *Id.* As a result of the January 2020 judgment, Defense Nutrition's claims remaining in the Underlying Lawsuit against Defendants are: (1) damages for breach of contract; and (2) damages for fraud. *Id.* Defense Nutrition's claim for fraud seeks damages for Eagle Mist's alleged fraudulent representations relating to the bars. Doc. [60-7].

Based on those facts, Plaintiffs filed a Complaint, Doc. [55], against Defendants for (1) declaratory judgment, and (2) unjust enrichment. Plaintiffs seek a declaratory judgment relating to whether Plaintiffs have a duty to defend Defendants on the remaining claims in the Underlying Lawsuit. Plaintiffs also seek to recoup defense fees and costs Plaintiffs expended in defending Defendants in the Underlying Lawsuit. In the instant Motion, Plaintiffs moved for summary judgment pursuant to Fed. R. Civ. P. 56. Doc. [58].

## II.   LEGAL STANDARD

"A court must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). "The movant bears the initial responsibility of informing the district court of the basis for its motion and must identify the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact." *Id.* at 996; *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

"Only after the moving party fulfills its duty is the nonmoving party obliged to proffer evidence that contradicts the moving party's showing and that proves the existence of a genuine issue of material fact." *Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir. 1997) (internal quotations omitted); *accord*

6

*Leffall v. City of Elsberry, Mo.*, No. 4:15-cv-398 SPM, 2016 WL 2866422, at *2 (E.D. Mo. May 17, 2016) ("If the moving party meets this initial burden, the nonmoving party must then set forth affirmative evidence from which a jury might return a verdict in his or her favor.").  "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007).

## III.   DISCUSSION

Plaintiffs seek a declaratory judgment relating to whether Plaintiffs have a duty to defend Defendants on the remaining claims in the Underlying Lawsuit.  In support of their Motion, Plaintiffs allege they have no obligation to defend because Defendants were not "additional insureds" under the Policies issued to Sapphire, or in the alternative, even if Defendants were additional insureds, the Policies do not cover the claims against them that remain in the Underlying Lawsuit.  Plaintiffs' unjust enrichment claim seeks recoupment of fees and costs expended from defending Defendants in the Underlying Lawsuit.  Plaintiffs' claim is premised on a finding that Defendants are not insureds under Sapphire's insurance policy, thus, Plaintiffs' expenditures constituted an unjust benefit.

For reasons set forth below, the Court finds that a genuine dispute of material fact remains as to whether Defendants were "additional insureds" under Sapphire's policy. However, even if Defendants were additional insureds, the Policies do not cover the *remaining* claims in the Underlying Lawsuit as a matter of law.[3] *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. banc 1999) (interpreting an insurance policy is a question of law).

---

[3] Defendants claim there are genuine disputes over whether the remaining claims in the underlying lawsuit involve "bodily injury" that could potentially be covered by the insurance policies; however, the interpretation of an insurance policy is a question of law. *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 686 F.3d 539, 543 (8th Cir. 2012).

## A. Declaratory Judgment

An insurer has no duty to defend if there is no "possibility" the claims in the underlying litigation are covered by the insurer's policy. *McCormack*, 989 S.W.2d at 170.   If there is a "possibility" claims are covered, an insurer can defend the insured and reserve its right to later disclaim coverage, provided it gives the insured proper notice. *Safeco Ins. Co. of Am. v. Rogers,* 968 S.W.2d 256, 258 (Mo. Ct. App. 1998).   Subject to the reservation of rights, if during the course of the underlying litigation all "possibly" covered claims are extinguished, the insurer is entitled to bring an action for declaratory judgment to determine its continued obligations. *Id.*   If it is shown there is no "possibility" for coverage in the suit, a court can declare that the insurers duty to defend is terminated. *See e.g., Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 924 (8th Cir. 1998) (finding that although the insurer had an initial duty to defend, that duty expired upon the determination that the claims against it were excluded from coverage).

The Court begins its analysis by determining whether Plaintiffs have a duty to defend Defendants on the *remaining* claims in the Underlying Lawsuit.

A district court sitting in diversity applies the law of the state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Am. Family Mut. Ins. Co. v. Co Fat Le,* 439 F.3d 436, 439 (8th Cir. 2006).   Under Missouri law, the duty to defend is triggered by the "possibility" of coverage, "even though claims beyond coverage may also be present." *Truck Ins. Exch. v. Prairie Framing, LLC,* 162 S.W.3d 64, 79 (Mo. Ct. App. 2005); *McCormack*, 989 S.W.2d at 170 ("An insurer's duty to defend a suit arises if there is potential or *even possible* liability to pay based upon the facts at the outset of the case").   To extricate itself from a duty to defend, the insurance company must prove that there is *no possibility* of coverage. *Id.*   To determine whether there is a duty to defend, the language of the insurance policy is compared with the allegations against the insured

in the underlying lawsuit. *Am. Family Mut. Ins. Co. v. Southside Ventures, LLC*, Case No. 2:29-CV-04230-BCW, 2020 WL 9218531, at *4 (W.D. Mo. Dec. 4, 2020).  The interpretation of an insurance policy is a question of law. *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 686 F.3d 539, 543 (8th Cir. 2012); *McCormack*, 989 S.W.2d at 171.  "In Missouri, the language of an insurance policy should be enforced as written, giving the policy language its ordinary meaning." *Southside*, Case No. 2:29-CV-04230-BCW at *4.  Missouri law accords the terms of an insurance policy "the meaning which would be attached by an ordinary person of average understanding." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007); *see also*, *Piatt v. Ind. Lumbermen's Mut. Ins. Co.,* 461 S.W.3d 788, 792 (Mo. banc 2015) (finding that absent ambiguity, Missouri courts will interpret the language of a policy according to its plain meaning as understood by an ordinary insured of average understanding).

Here, the plain language of the Policies are clear: "We will pay those sums that the insured becomes legally obligated to pay as *damages* because of *"bodily injury"*, "property damage"[4] or "personal and advertising injury" to which this insurance applies."  The Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person" and "physical injury."  Doc. [60-2]; Doc. [60-3].  The Parties do not dispute that the Policies only cover damages from "bodily injury," but rather, the dispute hinges on whether the remaining claims "possibly" constitute damages from "bodily injury."

Although nearly fifteen claims were originally filed against Defendants in the Underlying Lawsuit, currently, just five remain.  Julian asserts against Eagle Mist alone, claims for breach of contract by third party beneficiary, fraud, and promissory estoppel.  Defense Nutrition asserts

---

[4] Pursuant to the Policies, "Property damage" means "physical injury to tangible property" or "loss of use of tangible property that is not physically injured."  Similar to bodily injury, there are no potential claims of property damage remaining in the Underlying Lawsuit so the Court will not undergo a separate analysis.

against Eagle Mist and Laughlin, claims for breach of contract and fraud.  With respect to the remaining claims in the Underlying Lawsuit, Julian alleges it seeks relief for out-of-pocket costs, lost profits, damages from alleged fraudulent conduct, punitive damages, and damage to reputation and good will. Doc. [60-6] ¶¶ 57, 127, 134.  Similarly, Defense Nutrition alleges damages for Defendants' alleged breach of contract and damages for Defendants' alleged fraudulent representations relating to the bars.  Doc. [60-7].  The undisputed facts show that since the January 2020 judgment, at least, which left just five claims remaining, Defendants are liable only for damages sounding in contract and fraud – not bodily injury – thus, the remaining claims in the Underlying Lawsuit show "no possibility of coverage." *McCormack*, 989 S.W.2d at 170.  The Court takes notice that some of the original claims in the Underlying Lawsuit may have been "possibly"[5] related to "bodily injury," however, those claims do not remain in the current litigation, and the remaining claims are not causally related to damages from bodily injury. *Wood v. Safeco Ins. Co. of America,* 980 S.W.2d 43, 46 (Mo. Ct. App. 1998) (finding a "possible" duty to defend because "property damage" may be casually related to the insureds acts subject to suit).  Rather, the remaining claims in the Underlying Lawsuit seek damages that are contractual and economic in nature, and "an ordinary insured of average understanding" would not find that claims for *economic damages* are synonymous with claims to pay damages for "bodily injuries." *Seeck*, 212 S.W.3d at 132.  And such a reading has been rejected by other courts. *See, e.g., Southside*, Case No. 2:29-CV-04230-BCW at *5 (finding no duty to defend because claims for economic loss do not constitute damages for "property damage" or "bodily injury").  Further, an ordinary person

---

[5] The Court finds that if Defendants were insureds under the Policies, the Policies may have *possibly* covered some of the claims for damages for "bodily injury."  *See e.g.*, Doc. [60-6] ¶ 86 ("Alleging that because of the foregoing breaches, all Defendants have directly and proximately harmed Julian Bakery, or may be subject to liability, "as a result of at least one claim made by a customer reporting that the hardness of the manufactured product caused the customer's tooth to chip and dental filling to fall out.").  However, because those claims were all dismissed, they are not at issue in the instant Motion.

placed in the position of the insured would understand the term "bodily injury" excludes damages[6] resulting from breach of contract and fraud relating to the bars. *Piatt,* 461 S.W.3d at 792 (interpreting the language of a policy according to its plain meaning as understood by an ordinary insured of average understanding).  Because the plain language of the Policies cover damages for "bodily injury" and the damages sought in the remaining claims are economic and contractual damages, Plaintiffs owe no duty to defend Defendants in the Underlying Lawsuit.

Now that it has been determined that the remaining claims are not within coverage, the Court will discuss whether Plaintiffs assumed defense of the Defendants was pursuant to a proper reservation of rights.

Upon proper notice to the insured, Missouri law permits an insurer to defend its insured, but reserve its right to later disclaim coverage. *Rogers*, 968 S.W.2d at 258 ("an insurer may choose to undertake the defense of its insured and reserve its right to later disclaim coverage, provided it gives the insured notice of a reservation of rights.").  "A liability insurer that assumes the defense of its insured should promptly advise the insured of any grounds on which it appears that all or any part of that asserted liability might not be covered." *Advantage Bldgs. & Exteriors, Inc. v. Mid-Continent Cas. Co.*, 449 S.W.3d 16, 23 (Mo. Ct. App. 2014).  "A 'proper' reservation of rights must be both clear and timely, and the insured must fully understand the insurer's position." *Id.*  If an insurer fails to properly reserve its rights to disclaim coverage, the insurer may be estopped from later denying coverage under the policy.  *Id.* at 24.

Here, the undisputed facts show Plaintiffs assumed the defense of Defendants subject to a reservation of rights since at least March 2, 2017.  After being sued by Julian and Defense Nutrition

---

[6] The Court takes notice of the Security Policy that excludes damages for "contractual liability" and the March 2017 letter, wherein Plaintiffs reiterated that point and told Defendants there is no insurance coverage for *economic damages* for breach of contract and fraud.

in California, Defendants tendered the lawsuit to its alleged insurer, Plaintiffs.  Shortly thereafter, Plaintiffs timely[7] advised Defendants in a letter[8] dated March 2, 2017, the "grounds under which some or all aspects of the Lawsuit may *not be covered* under the Policies," Doc. [60-8] at 18, as Missouri law requires. *Advantage*, 449 S.W.3d at 23 ("A liability insurer that assumes the defense of its insured should promptly advise the insured of any grounds on which it appears that all or any part of that asserted liability *might not* be covered.").  Several pages of the March 2017 letter clearly and unambiguously explain the relevance of Plaintiffs' policy provisions to Defendants' position and how coverage issues are potentially created.  Most notable, the March 2017 letter specifically notified Defendants that there would be *no* insurance coverage for economic damages for claims from breach of contract and fraud – the exact claims at issue here. *Id.* at 19.  Thus, Plaintiffs – the insurer – effectively informed Defendants – the insured – the grounds of which Plaintiffs believed it was not required to extend coverage provided under the Policies.

Despite Plaintiffs' laundry list of "grounds" that may exclude the Underlying Lawsuit from coverage, Plaintiffs agreed to provide a defense to Defendants "subject to a reservation of all rights." Doc. [60-8] at 3-25.  Such reservations included but were not limited to: (1) "declin[ing] insurance coverage … at a later date," (2) to later "have a court determine whether or not [Defendants] are, or ever were, obligated to defend," and (3) to "seek reimbursement" if Plaintiffs paid for the defense of claims that do not fall within the scope of coverage.  Doc. [60-8] at 18, 23.  Upon proper notice of Plaintiffs' reservation of rights, Defendants "considered the matter fully and freely waive[d] its rights" and accepted Plaintiffs' defense pursuant to the reservation of rights

---

[7] Plaintiffs' reservation of rights was timely because Defendants were brought into the Underlying Lawsuit on November 14, 2016, and Plaintiffs sent the reservation of rights letter on March 2, 2017.  In *Advantage Bldgs. & Exteriors, Inc. v. Mid-Continent Cas. Co.*, 449 S.W.3d 16, 23 (Mo. Ct. App. 2014), the Court did not find an effective reservation of rights because the insured assumed complete representation for two years without reserving rights, therefore, it was untimely.
[8] The Court also takes notice of two other letters on November 2018 and November 2019 that are similar to the March 2017 letter explaining coverage issues.

12

letter. Doc. [60-8] at 26.   Because Plaintiffs' reservation of rights was timely, clear, and unambiguously informed Defendants of Plaintiffs' position as to coverage, Plaintiffs properly reserved their rights to disclaim coverage at a later date. *Advantage*, 449 S.W.3d at 23 (finding the insurer did not properly reserve its right to disclaim coverage when it agreed to defend the insured because the "'reservation of right' notification was not timely or clear, nor did it fully and unambiguously inform the insured of the insurance company's position as to coverage.").

Defendants argue that Plaintiffs waived their rights or should be estopped from asserting their right to deny coverage because they have provided a defense thus far.   However, as explained above, Plaintiffs' reservation of rights was timely, proper, and effective, thus Plaintiffs are not estopped[9] from denying coverage. *Advantage*, 449 S.W.3d at 23 ("defending an action with knowledge of non-coverage under a policy of liability insurance without a *proper and effective* reservation of rights in place will preclude the insurer from later denying liability due to non-coverage").   Additionally, because Defendants freely accepted Plaintiffs' defense subject to a reservation of rights which asserted non-liability in the future, Defendants' waiver argument fails as a matter of law. *Rogers*, 968 S.W.2d at 258 ("where an insurer provides notice to the insured that its defense of the action is subject to a reservation of its right to assert non-liability, and the insured accepts the defense without protest and with full knowledge and passive acquiescence in

---

[9] For similar reasons, Defendants equitable estoppel argument fails.   "To support estoppel, there must be a representation made by the party estopped and relied upon by another party who changes his position to his detriment." *Investors Title Co. v. Chicago Title Ins. Co.*, 983 S.W.2d 533, 537 (Mo. Ct. App. 1998).   Defendants cannot now argue estoppel by claiming detrimental reliance on Plaintiffs' coverage letters (March 2017 letter, November 2018 letter, and November 2019 letter), Doc. [62] at 4 (claiming Plaintiffs reiterated their coverage position in those letters), because the letters clearly and unambiguously informed Defendants of Plaintiffs' position as to coverage, as explained in this Motion. Further, Plaintiffs did not "belatedly" assert their rights in the current action. *Investors*, 983 S.W.2d 537 ("Equitable estoppel arises from the unfairness of allowing a party to belatedly assert rights if he knew of those rights but took no steps to enforce them until the other party has, in good faith, been disadvantaged by changed conditions.").   Rather, the undisputed facts show Plaintiffs moved for a judicial declaration once it became apparent that there was no "possibility" for coverage, and Missouri law required Plaintiffs to continue representation in the interim. *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 924 (8th Cir. 1998) (holding that an insurer has a duty to defend its insured until a judicial determination on the insurer's duty to defend is made).

the insurer's position of non-liability, the insurer does not waive any of its policy provisions."). Moreover, from a practical standpoint, "a waiver is the intentional relinquishment of a known right," *Investors Title Co. v. Chicago Title Ins. Co*., 983 S.W.2d 533, 537 (Mo. Ct. App. 1998), and the March 2017 letter makes clear that Plaintiffs defense of Defendants under a reservation of rights "does *not waive…*the subject policies' terms, *nor does it waive* [Plaintiffs'] right to dispute issues of coverage." Doc. [60-8] at 24.  Therefore, the Court does not find estoppel or waiver precludes Plaintiffs from exercising their reservation of rights in the current Motion.

Now that it has been determined that Plaintiffs properly reserved their rights to disclaim coverage at a later date, the Court will discuss whether Plaintiffs can withdraw from a defense since all "possibly" covered claims have been dismissed.

"If the insured agrees to the insurer's assumption of the defense under a reservation of rights, the insurer is entitled to bring an action for declaratory judgment as to its obligation in the underlying litigation." *Rogers*, 968 S.W.2d at 258; *see also*, *Advantage*, 449 S.W.3d at 24 (failing to affect a proper reservation of rights precluded the insurer from later asserting only limited coverage for the claim vis-à-vis a declaratory judgment).  Pursuant to a declaratory judgment, if a court determines the insurer no longer has a duty to defend, the insurer's duty is extinguished. *See e.g., FAG Bearings*, 153 F.3d at 924 (finding that although the insurer had an initial duty to defend, that duty expired upon the determination that the claims against them were excluded from coverage); *see also Zurich Am. Ins. Co. v. U.S. Eng'g. Co.*, No. 18-cv-00933, 2012 WL 13028219, at *4 (W.D. Mo. May 30, 2012) ("once it is determined that an insurance policy does not provide coverage for a claim, an insurer's duty to defend expires.").

In this case, as we have noted, Defendants accepted Plaintiffs' defense under a reservation of rights.  At the outset of litigation, some of the original claims in the Underlying Lawsuit may

have shown a "possibility" of coverage, although others did not, thus triggering Plaintiffs' duty to defend.[10] *McCormack*, 989 S.W.2d 170.  In proffering a reservation of rights defense, Plaintiffs considered a portion of the tendered claims as being "possibly" covered under their Policies and reserved the right to seek to extinguish their defense obligation by obtaining a judicial declaration if it becomes apparent that there was no potential for coverage. Doc. [60-8] at 24.  After the California state-court dismissed several claims in the Underlying Lawsuit, Plaintiffs exercised their reserved rights by filing a declaratory judgement,[11] alleging they had no obligation to continue to defend because "no claims against [Defendants] in the Lawsuit were even potentially covered claims." Doc. [55] ¶ 45; *see also Advantage*, 449 S.W.3d at 24 (proving "no possibility of coverage" extricates an insurer from its duty to defend).  Because Plaintiffs properly reserved its rights to later disclaim coverage and the Court determined that all remaining claims are not "possibly" covered, pursuant to the instant Motion, this Court finds that Plaintiffs do not have a duty to defend Defendants in the Underlying Lawsuit.

Accordingly, the Court grants Plaintiffs' Motion as to Count I.

## B.  Unjust Enrichment

Plaintiffs action for unjust enrichment seeks to recoup the amount spent on Defendant's defense fees and costs in the Underlying Lawsuit.  Plaintiffs' stated basis for relief is that "Eagle Mist and Laughlin are not insureds under the Sapphire Policies and, as a result, they have absolutely no entitlement to a defense (or coverage)."  However, the record shows a genuine

---

[10] This assumes both Defendants were insureds under the Policies.  However, the Court finds that a genuine dispute of material fact remains as to whether Defendants were "additional insureds" under Sapphire's policy.

[11] Defendants argue "there is no justification" for Plaintiffs' "delay" in seeking judicial intervention to relieve Plaintiffs of their duty to defend.  However, Plaintiffs waited until November 2019 to file the declaratory judgment because that is when the records show it became apparent to Plaintiffs that there were no "possible" claims for coverage.  As an example, on April 23, 2019, the California Court dismissed Julian's claims for negligence against Defendant.  Further, Plaintiffs' course of action was procedurally proper as Missouri law requires an insurer to continue to defend the insured while the courts determine any questions as to whether the underlying claims are covered by the policies. *FAG Bearings*, 153 F.3d at 924.

dispute over whether several communications between Defendants, Defendants' agents, Plaintiff, and Sapphire were sufficient to add Defendants as "additional insureds" under Sapphire's policies. Whether or not the Defendants were insureds under the Policies is material to determining how much reimbursement of defense expenditures Plaintiff is entitled too, especially because the Court already found Plaintiffs' duty to defend ended and Plaintiffs properly reserved the right to later disclaim coverage.  Because a question of material fact remains on whether Defendants were insureds under the Policies, summary judgment is precluded.

Accordingly, the Court denies Plaintiffs' Motion as to Count II without prejudice because a question of material fact remains.

### CONCLUSION

On the undisputed facts, Defendants failed to show the remaining claims in the Underlying Lawsuit are covered by the Policies.  Accordingly, the Court grants Plaintiffs' Motion for declaratory judgment (Count I) and finds that Plaintiffs do not have a duty to defend Defendants in the Underlying Lawsuit.  However, a genuine dispute of material fact remains as to whether Defendants were "additional insureds" under Sapphire's policy, thereby precluding summary judgment on the unjust enrichment claim (Count II).  Count II is all that remains for trial.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs The Ohio Casualty Insurance Company and Ohio Security Insurance Company Motion for Summary Judgment, Doc. [58], is **DENIED in part and GRANTED in part**.

Dated this 4th day of October, 2021.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE