UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE OHIO CASUALTY INSURANCE COMPANY, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 4:19-cv-2974-MTS<br>) |
| EAGLE MIST CORPORATION d/b/a OSAGI INTERNATIONAL, *et al.*, | )<br>)<br>) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

Before the Court is Counter-Defendants The Ohio Casualty Insurance Company and Ohio Security Insurance Company's Motion for Summary Judgment on Counterclaims, Doc. [76], pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the Court grants Counter-Defendants' Motion.

**I.    BACKGROUND**[1]

This case arises from Counter-Defendants The Ohio Casualty Insurance Company and Ohio Security Insurance Company (collectively, "Insurers" or "Counter-Defendants") assumption of defense for Counter-Plaintiffs Eagle Mist Corporation d/b/a Osagi International ("Eagle Mist") and Kevin Laughlin (collectively, "Counter-Plaintiffs") in a 2016 state court lawsuit pending in California ("Underlying Lawsuit").

Insurers filed suit against Counter-Plaintiffs for declaratory judgment (Count I) and unjust enrichment (Count II). Doc. [55]. Insurers sought a declaratory judgment as to whether they had

---

[1] For a more detailed explanation of the facts, see the Court's previous Memorandum and Order, Doc. [67], on Plaintiffs' Motion for Summary Judgment on Counts I–II. *Ohio Cas. Ins. Co. v. Eagle Mist Corp.*, No. 4:19-cv-2974-MTS, 2021 WL 4523146, at *1 (E.D. Mo. Oct. 4, 2021).

a duty to continue defending Counter-Plaintiffs on the five remaining claims in the Underlying Lawsuit.[2]  Insurers' unjust enrichment claim sought to recoup $839,186.97—the *total* amount in defense fees and costs it had expended in defending Counter-Plaintiffs in the Underlying Lawsuit. Insurers moved for summary judgment on their own claims (Counts I–II).  Doc. [58].  The Court granted in part and denied in part the motion for reasons discussed in the Court's Memorandum and Order on Plaintiffs' Motion for Summary Judgment ("Court Order").  Doc. [67]; *Ohio Cas. Ins. Co. v. Eagle Mist Corp.*, No. 4:19-cv-2974-MTS, 2021 WL 4523146, at *8 (E.D. Mo. Oct. 4, 2021).

The Court granted summary judgment on the Insurers' declaratory relief claim (Count I) concluding that Insurers no longer had a duty to defend Counter-Plaintiffs in the Underlying Lawsuit because (1) Insurers defended Counter-Plaintiffs under a valid reservation of rights that properly reserved Insurers' rights to disclaim coverage at a later date, and (2) the remaining five claims in the Underlying Lawsuit were not covered under the policies ("Policies").[3]  Doc. [67] at 9–15.  However, the Court did *not* determine whether Insurers had a duty to defend Counter-Plaintiffs from the outset of the Underlying Lawsuit because there remained genuine issues of material fact[4] as to whether Eagle Mist and Laughlin were ever insureds under the Policies, thus, the Court denied summary judgment on the unjust enrichment claim (Count II).  *Id.* at 16.  Because

---

[2] After the California state-court dismissed several claims in the Underlying Lawsuit, Insurers exercised their reserved rights by filing a declaratory judgement, alleging they had no obligation to continue to defend because "no claims against [Counter-Plaintiffs] in the Lawsuit were even potentially covered claims." Doc. [55] ¶ 45; *see also Advantage Bldgs. & Exteriors, Inc. v. Mid-Continent Cas. Co.*, 449 S.W.3d 16, 24 (Mo. Ct. App. 2014) (providing "no possibility of coverage" extricates an insurer from its duty to defend).

[3] On January 9, 2016, Ohio Security issued a commercial general liability policy of insurance to Sapphire, and Ohio Casualty issued a commercial umbrella policy of insurance to Sapphire (collectively, "Policies").

[4] Currently, this case is set for trial on March 28, 2022 for Insurer's claim for unjust enrichment (Count II) and Counter-Plaintiffs Counterclaims for bad faith and declaratory relief.  Based on this ruling, the only claim that remains for trial is Counter-Defendants unjust enrichment claim (Count II).

of the dispute as to whether Counter-Plaintiffs were insureds, the Court also did not determine whether any of the original claims in the Underlying Lawsuit were covered under the Policies.[5] *Id.* at 10, 15.

Counter-Plaintiffs asserted two counterclaims against Insurers: bad faith (Counterclaim I) and declaratory relief (Counterclaim II). Doc. [56]. In the instant Motion, Insurers move for summary judgment on both counterclaims. Doc. [76].

## II. LEGAL STANDARD

"A court must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). The movant bears the initial burden of explaining the basis for its motion, and it must identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007). If the nonmoving party fails to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof, the moving party is "entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court views any factual disputes in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

---

[5] Although fourteen claims were originally filed against Counter-Plaintiffs in the Underlying Lawsuit, just five remained when Insurers moved for summary judgment on Counts I–II. Doc. [58].

3

### III.  DISCUSSION

#### A. Bad Faith

Counter-Plaintiffs assert a bad faith claim against Insurers based on several allegations. Doc. [56] ¶ 14, Counterclaim.  "Missouri courts allow for tort claims by an insured against an insurer where: (1) the claim is for bad faith refusal to settle a claim brought by a third party; or (2) the claim is based on conduct distinct from conduct constituting a breach of the insurance contract." *Blount v. Nationwide Agribusiness Ins. Co.*, 413 F. Supp. 3d 933, 936 (W.D. Mo. 2019) (citing *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 68 (Mo. banc 2000)).  Here, the Court focuses only on the second situation, since the first is plainly not applicable here, and concludes that Counter-Plaintiffs' "bad faith" claim fails as a matter of law such that Insurers are "entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323.

Fatal to Counter-Plaintiffs' claim is that Missouri recognizes no "bad faith" tort claim. *Koehrer v. Am. Motorists Ins. Co.*, 931 S.W.2d 898, 898 (Mo. Ct. App. 1996) (per curiam) (affirming dismissal of bad faith tort claim and noting trial court dismissed claim because "the tort of bad faith does not exist in Missouri").  Rather, actionable claims for "bad faith" by the insured against the insurer—besides bad faith to settle[6] and vexatious refusal to pay—must come from a distinct tort, like defamation. *Overcast*, 11 S.W.3d at 68 (recognizing defamation as a tort claim independent of conduct constituting a breach of insurance contract).  Here, however, Missouri recognizes no "bad faith" tort standing alone, as asserted by Counter-Plaintiffs.  Doc. [56] ¶ 14, Counterclaim (alleging Insurers acted in "bad faith" by "taking unreasonable positions," "failed to properly investigate," "deliberately failing to properly apply" and "deliberately misreading" their

---

[6] Missouri law recognizes a tort claim for bad faith failure to settle. *See Zumwalt v. Utilities Ins. Co.*, 228 S.W.2d 750 (Mo. 1950).  A claim for bad faith failure to settle "is a tort action based on the insurer's failure to protect the interests of its insured" and has distinct elements.  *Shobe v. Kelly*, 279 S.W.3d 203, 212 (Mo. Ct. App. 2009).

4

own policy language). Thus, because Counter-Plaintiff do not base their "bad faith" claim on violation of a distinct tort, Counter-Plaintiffs have no actionable "bad faith" claim under Missouri law.

Further, although Missouri imposes a duty on insurers to act in good faith, *Overcast*, 11 S.W.3d at 67, a breach of this duty is grounded in contract, and Missouri law prohibits the Court from "converting a breach of contract into a tort."[7] *Id.* at 69; *see also Ryann Spencer Grp., Inc. v. Assurance Co. of Am.*, 275 S.W.3d 284, 290 (Mo. Ct. App. 2008) (refusing to recognize tort liability that is "not based on conduct distinct from conduct that merely constitutes a breach of contract"). Because Counter-Plaintiffs did not sue or intend to sue Insurers under a theory of breach of contract, and the deadline to add such a claim is long gone, Counter-Plaintiffs cannot sue Insurers for "bad faith" based on a theory of breaching a duty of good faith.[8]

The Court notes that *other* states do recognize a "bad faith" claim standing alone, specifically in circumstances as alleged by Counter-Plaintiffs.[9] It is also true no Missouri court

---

[7] The only exception is in a bad faith to settle tort claim, which separately imposes an obligation on the Insurer to act in good faith. *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 67–68 (Mo. banc 2000); *Duncan v. Andrew County Mut. Ins. Co.*, 665 S.W.2d 13, 18 (Mo. Ct. App. 1983).

[8] Insurers' argument that Counter-Plaintiff's "'Bad Faith Claim is a Contract Claim in Disguise" is unavailing. Doc. [77] at 7. The Court recognizes that Counter-Plaintiffs' "bad faith" claim as alleged was separate and independent of any contract claim. Unfortunately, Missouri law does not recognize a "bad faith" claim here unless Counter-Plaintiffs did assert a contract claim or asserted a violation of an already recognized distinct tort.

[9] Courts in other jurisdictions *do* find bad faith in the circumstances alleged by Counter-Plaintiffs. *See Pozzi Window Co. v. Auto-Owners Ins.*, 446 F.3d 1178, 1188 (11th Cir. 2006) (explaining factors that Florida courts identify as relevant to a bad-faith determination against an insurer such as an insurer's efforts or measures to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds and the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage); *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 524 (3d Cir. 2012) (explaining that under Pennsylvania law bad faith may extend to an insurer's investigation and other conduct in handling the claim that "imports a dishonest purpose" such as lacking a "reasonable basis for denying coverage"); *Kirchoff v. Am. Cas. Co., of Reading, PA.*, 997 F.2d 401, 404 (8th Cir. 1993) (citing *Champion v. United States Fidelity & Guar. Co. (In re Certification of a Question of Law)*, 399 N.W.2d 320, 324 (S.D. 1987)) (requiring a party to demonstrate on a bad faith claim that coverage was denied with "knowledge of the absence of a reasonable basis for the denial" or in "reckless disregard of whether a reasonable basis existed")); *Carpenter v. Lovell's Lounge & Grill, LLC*, 59 N.E.3d 330, 340 (Ind. Ct. App. 2016) ("To prove [an insurer's] bad faith [in denying a claim], the plaintiff must establish by clear and convincing evidence that the insurer had knowledge that there was no legitimate basis for denying liability.").

has held that a bad faith claim is inapplicable under these circumstances, and further, that Missouri courts have left open which torts—whether from the claim denial itself or related conduct—are actionable. Despite these truths, this Court—a federal court—cannot create a Missouri "bad faith" claim when Missouri does not recognize a "bad faith" claim standing alone, as discussed *supra*.

Accordingly, the Court grants Counter-Defendants' Motion as to Counterclaim I.

### B. Declaratory Relief

Counter-Plaintiffs seek declaratory relief (Counterclaim II) requesting this Court's declaration that Insurers "are obligated to pay the costs to defend and indemnify [Counter-Plaintiffs] for any liability arising from the Claims." Doc. [56] ¶ 22, Counterclaim. Yet, the Court previously concluded that the remaining claims in the Underlying Lawsuit are "not within coverage." Thus, the Court cannot grant the relief sought because it already has concluded there is *no* obligation for Insurers to "defend" Counter-Plaintiffs on the remaining claims in the Underlying Lawsuit.[10] Doc. [67] at 15. *Sandy v. Schriro*, 39 S.W.3d 853, 856 (Mo. Ct. App. 2001) (dismissing a declaratory judgment claim "if it is certain there is no basis for plaintiff's contention that it is entitled to a declaration of rights and obligations") (internal citation omitted).

The Court's conclusion is not altered even if a jury determines that Eagle Mist and Laughlin were additional insureds and that some of the original claims in the Underlying Lawsuit were covered by the Policies. First, Insurers *already* have paid Counter-Plaintiffs' defense costs in the Underlying Lawsuit. The fact that Insurers already paid for the costs sought in Counterclaim II is exactly why Insurers' filed suit for unjust enrichment (Count II) in the first place: to recoup the total amount in defense fees and costs expended in defending Counter-Plaintiffs in the Underlying Lawsuit. As the Court noted previously, it denied summary judgment on Count II solely to

---

[10] Insurers argue this point in their Motion. Doc. [77] at 11. Counter-Plaintiffs did not respond to or contest this argument in their response brief. Doc. [79].

determine "[w]hether or not [Counter-Plaintiffs] were insureds under the Policies [because that] is material to determining *how much reimbursement of defense expenditures [Insurers] are entitled.*" Doc. [67] at 16 (emphasis added).  Second, the Court cannot require insurers to indemnify Counter-Plaintiffs for any "liability," as requested in Counterclaim II, because any of the "potentially" covered claims were dismissed from the Underlying Lawsuit.[11]  Thus, there is no "conflict that is presently existing." *Ameren Transmission Co. of Ill. v. Pub. Serv. Comm'n of the State of Mo.*, 467 S.W.3d 875, 880 (Mo. Ct. App. 2015) (granting summary judgment on a claim for declaratory judgment because the "uncontroverted facts reflected that there was no presently existing controversy between the parties that was ripe for judicial determination.").  For all these reasons, Insurers are "entitled to a judgment as a matter of law." *See Celotex*, 477 U.S. at 323.

Accordingly, the Court grants Counter-Defendants' Motion as to Counterclaim II.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Counterclaim Defendants The Ohio Casualty Insurance Company and Ohio Security Insurance Company Motion for Summary Judgment, Doc. [76], is **GRANTED** with prejudice.

Dated this 22nd day of December, 2021.

                                              MATTHEW T. SCHELP
                                              UNITED STATES DISTRICT JUDGE

---

[11] In the Summary Judgment Opinion, Doc. [67], the Court "took notice" that some of the original claims in the Underlying Lawsuit may have been "possibly" covered under the Policies, however, those claims were all dismissed. Doc. [67] at 10, n.5.